UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FAIR HOUSING JUSTICE CENTER, INC.,

                              Plaintiff,

            v.

THE RABSKY GROUP LLC; PURVIS HOLDINGS LLC; SALAMON ENGINEERING PLLC; NORTH-DRIGGS HOLDINGS, LLC; and NORTH PLAZA HOLDINGS LLC,

                              Defendants.

___ Civ. _____ ( )

**COMPLAINT**

Plaintiff, Fair Housing Justice Center, Inc. ("FHJC") by its attorneys, Emery Celli Brinckerhoff & Abady LLP, for its Complaint against Defendants The Rabsky Group, LLC, Purvis Holdings LLC, Salamon Engineering PLLC, North-Driggs Holdings, LLC, and North Plaza Holdings LLC (collectively the "Defendants"), alleges as follows:

**INTRODUCTION**

1. The Rabsky Group is one of the largest developers of newly constructed multi-family housing in Queens and Brooklyn, New York with approximately 2500 apartments currently under development at more than a dozen sites. Although it has been well settled for decades that developers, architects, and engineers are required to design and construct new residential multi-family buildings with certain accessibility features, The Rabsky Group has openly ignored its legal obligations and denied equal housing opportunity to people with physical disabilities in New York City.

2. Based on investigations conducted by the FHJC over the past ten years in New York City, nearly 20 lawsuits have been filed in federal court against some of the largest

multi-family residential developers and architects alleging a failure to design and construct accessible housing as required by fair housing laws.  Broad remedies to retrofit the housing, compensate victims, and ensure that future new residential construction is accessible to people with physical disabilities have been implemented in those cases not yet pending in court.  As a result, FHJC has found an increased level of compliance generally among residential developers in New York City.  In this context, The Rabsky Group's current and repeated noncompliance is indicative of the company's ongoing practice of denying housing to persons with physical disabilities, including those who use wheelchairs, and its intentional refusal to comply with fair housing laws.

3. FHJC seeks to halt and reform Defendants' discriminatory practices so that multi-family housing developed by Defendants, currently and in the future, will be designed and constructed in full compliance with the law.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 28 U.S.C. § 2201, and 42 U.S.C. § 3613.  This Court has supplemental jurisdiction over the New York State and New York City causes of action pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because four of the five defendants are incorporated in this District and all the Defendants conduct business in this District.

## THE PARTIES

**Plaintiff**

6. The FHJC is a non-profit organization dedicated to ensuring that all people have equal access to housing opportunities in the New York City metropolitan region by eliminating housing discrimination and creating open, accessible, and inclusive communities.

2

The FHJC's office is located in the District in Queens, New York.

7. Among other things, the FHJC, a) provides information to the public and other nonprofit organizations in the New York City area about fair housing laws, b) provides intake counseling to individuals and organizations with allegations of housing discrimination, c) conducts testing and other investigations of allegations of housing discrimination, d) makes legal referrals to cooperating attorneys, e) assists with the preparation and filing of administrative housing discrimination complaints, and f) provides post-referral litigation support services.  The FHJC provides these services free of charge and without regard to income.

8. The FHJC also conducts testing investigations for government law enforcement agencies, provides technical assistance to nonprofit organizations engaging in fair housing enforcement activities, and engages in policy initiatives that further the FHJC's mission, including the publication and dissemination of reports and educational materials.

9. The FHJC operates the Adele Freidman Housing Accessibility Fund ("the Fund") for the purpose of providing financial assistance to persons with physical disabilities within FHJC's service area who need reasonable modification made to their existing housing to make it accessible.  FHJC established the Fund, in part, due to residential developers and architects continuing to design and construct inaccessible multi-family housing in New York City in violation of fair housing laws.

10. The FHJC employs individuals as "testers," who are persons that pose as renters or homebuyers for the purpose of obtaining information about the conduct of local governments, landlords, real estate companies, housing developers, agents, and others to determine whether illegal housing discrimination is taking place.

11. The FHJC expended staff time and other resources to investigate and

respond to Defendants' discriminatory practices, which diverted resources away from other FHJC activities.

12. By designing and constructing inaccessible housing, Defendants' practices have frustrated and continue to frustrate the FHJC's mission to ensure that all people have equal access to housing opportunities in the greater New York City region

**Defendants**

13. Defendant The Rabsky Group LLC ("Rabsky Group") is a limited liability company incorporated in Kings County in the State of New York. Defendant Rabsky Group's office is located in Brooklyn, New York and its principal owners, Simon Dushinsky and Isaac Rabinowitz, have been developing residential properties in the State of New York and this District for more than 25 years. Defendant Rabsky Group is the developer of Halo, LIC, The Driggs Williamsburg, and Driggs, North, three multi-family residential rental buildings with more than 725 apartments.

14. Defendant Purvis Holdings LLC ("Purvis") is a limited liability company incorporated in Kings County in the State of New York. Purvis' principal office is located in the same office with Defendant Rabsky Group. Defendant Purvis is the owner of Halo LIC, a 26-story multi-family residential rental building with 284 units in the Long Island City neighborhood of Queens, New York. As the owner, Defendant Purvis has been responsible for the overall design and construction of the dwelling units and common areas at Halo LIC, 44-41 Purves Street, Long Island City, Queens, New York.

15. Defendant Salamon Engineering PLLC ("Salamon") is a professional service limited liability company incorporated in New York County with its principal offices located in Manhattan, New York. Defendant Salamon is the architectural and engineering firm

that designed and constructed the multi-family residential dwelling units and common areas at Halo LIC.

16. Defendant North-Driggs Holdings, LLC ("North-Driggs) is a limited liability company incorporated in Kings County in the State of New York. Defendant North-Driggs' principal office is located in the same office with Defendant Rabsky Group. Defendant North-Driggs is the owner of The Driggs, a multi-family residential building with 211 rental units in Williamsburg, Brooklyn. As the owner, Defendant North-Driggs has been responsible for the overall design and construction of the dwelling units and common areas at The Driggs, 205 North 9th Street, Brooklyn, New York.

17. Defendant North Plaza Holdings LLC ("North Plaza") is a limited liability company incorporated in Kings County in the State of New York. Defendant North Plaza's principal office is located in the same office with Defendant Rabsky Group. Defendant North Plaza is the owner of Driggs-North, a multi-family residential building with 234 rental units in Williamsburg, Brooklyn. As the owner, Defendant North Plaza has been responsible for the overall design and construction of the dwelling units and common areas at Driggs-North, 220 North 10th Street, Brooklyn, New York

**STATUTORY AND REGLUATORY FRAMEWORK**

18. In 1988, Congress enacted the Fair Housing Act Amendments ("FHAA") design and construction accessibility requirement as part of comprehensive amendments to the Fair Housing Act to prohibit discrimination on the basis of disability.[1] The legislative history of the FHAA reflects Congressional findings that steps and thresholds at building or unit entrances

---

[1] The Fair Housing Act Amendments ("FHAA") uses the term "handicap" rather than "disability." Both terms have the same legal meaning. *See Bradgon v. Abbott*, 524 U.S. 624, 631 (1998). This complaint uses the terms "disability" and "handicap" interchangeably. The term "disability" is more generally accepted.

send the same signal to persons using a wheelchair as a posted sign saying "No Disabled People Allowed."

19. Poorly designed and constructed buildings often exclude people with physical disabilities, including those use wheelchairs. In considering the 1988 amendments, Congress stressed that enforcement of civil rights laws is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including "architectural barriers" erected by architects, developers and builders who fail to design and construct dwellings and common use areas at those dwellings accessible to and adaptable by people with physical disabilities. H.R. Rep. No. 100-711, at 25 (1988), *reprinted in* 1988 U.S.C.A.A.N. 2173, 2186; 134 Cong. Rec. S10454, 10463 (Aug. 1, 1998).

20. The FHAA mandates that multi-family residential buildings containing four (4) or more units, and built for first occupancy after March 13, 1991 ("covered multi-family dwellings") are subject to certain design and construction requirements. Covered multi-family dwellings must provide:

  a. Public-use and common-use areas that are readily accessible to, and usable by, people with mobility impairments;

  b. Doors designed to allow passage into and within all premises within such dwellings that are sufficiently wide to allow passage by people in wheelchairs;

  c. An accessible route into and through the dwellings;

  d. Light switches, electrical outlets, thermostats and other environmental controls in accessible locations;

  e. Reinforcements in bathroom walls that allow for the later installation of grab bars; and

  f. Usable kitchens and bathrooms such that an individual in a wheelchair can maneuver about the space.

21. Pursuant to Congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated the final FHAA design and construction regulations in January 1989. 24 C.F.R. § 100.205. HUD published the final Fair Housing Accessibility Guidelines on March 6, 1991, 56 Fed. Reg. 9472 ("FHAAG"), which incorporates the requirements of the American National Standard for buildings and facilities providing accessibility and usability for people with physical disabilities, A117-1-1986 ("ANSI"), the *Fair Housing Act Design Manual* in August 1996, which was revised in August 1998, and the *Accessibility Requirements for Covered Multifamily Dwellings under the Fair Housing Act* in April 2013.

22. The New York State Human Rights Law similarly prohibits failing to design and construct covered multifamily dwellings in an accessible manner. Article 15 of the New York Executive Law§ 296(5) and (18).

23. The New York City Human Rights Law prohibits discrimination in the rental of, or to otherwise deny or withhold, a housing accommodation to a renter because of disability. NYC Administrative Code, § 8-107(5) and 27-292.8 which contains the accessibility requirements under the New York City Building Code.

## FACTUAL BACKGROUND

**Lack of Accessibility at Halo LIC**

24. Halo LIC is a 284-unit rental building with elevator access located in Long Island City, Queens, New York that opened for occupancy in 2016. Halo LIC includes 1, 2 and 3-bedroom apartments with balconies or terraces. All of the apartments at Halo LIC are covered dwelling units as defined by the Fair Housing Act. The building has onsite parking. Common amenities include, among other things, laundry rooms, a fitness center, a library, a theater

lounge, a roof deck, game room, and business center. The individual apartments, common areas, and parking at Halo LIC have been designed and/or constructed by Defendants Rabsky Group, Purvis, and Salamon Engineering.

25. On November 16, 2016, FHJC sent two testers to Halo LIC posing as a husband and wife to inquire about a 2- or 3-bedroom apartment on behalf of a relative with disabilities who uses a wheelchair.

26. The two FHJC testers met with a man named Wyatt who said he was a leasing agent for Halo LIC. Wyatt told the testers that 1- and 2-bedroom apartments were available for rent and showed them two 2-bedroom apartments. The testers observed the following during their visit to Halo LIC:

a) the main entrance door to the building required excessive force to open;

b) the doorway to the fitness center was too narrow;

c) one door from the tenants' lounge to an outside terrace with common amenities had too steep of a threshold without being beveled or tapered and another door from the tenants' lounge to a different outside area had too high of a step up to the terrace;

d) all the interior doors inside the two units shown to the testers were too narrow;

e) the balcony in each of the two units shown to the testers had a step up;

f) environmental controls in each of the two units shown to the testers were not in an accessible location; and

g) the clear floor space in the master bathroom in one of the units shown to the testers lacked clear floor space.

27. When the testers asked the leasing agent if the bathroom walls were

8

reinforced, as required by law, he said he did not know.

**Rabsky Group Multi-Family Developments in Williamsburg Also Inaccessible**

28. Halo LIC is not the only residential building that Defendant Rabsky has developed in violation of the accessibility requirements of the Fair Housing Act and other fair housing laws. In Williamsburg, Brooklyn, Defendant Rabsky Group developed the following two multi-family rental buildings between 2011 and 2014 prior to construction of Halo LIC.

a) The Driggs Williamsburg, 205 North 9th Street, Brooklyn with 211 units; and

b) Driggs-North, 220 North 10th Street with 234 units.

29. Both buildings have elevator access with common amenities such as a fitness center, laundry room, rooftop deck, and parking.

30. On March 2, 2017, the FHJC sent two testers posing as a husband and wife to inquire about a 1- or 2-bedroom apartment for a relative with disabilities who uses a wheelchair.

31. The two testers met at The Driggs apartment building with a man named Eddie, who is a leasing agent with the same company as the leasing agent who met with FHJC testers at Halo LIC in 2016. Eddie told the FHJC testers that there were apartments available to rent and showed them one 2-bedroom apartment and one 1-bedroom apartment.

32. During their visit, Eddie told the testers that usually the apartments on the ground floor of each building are required to be accessible even though all units in a multi-family residential elevator-building such as The Driggs and Driggs-North are covered dwellings and must comply with the accessibility requirements of the Fair Housing Act and other fair housing laws.

33. The Driggs shares an outdoor parking lot with Driggs-North. The testers

9

observed that the parking lot does not contain any accessible parking spaces even though 2% of the parking spaces should be designed and designated as accessible.

34. The first apartment Eddie showed the FHJC testers was located at The Driggs at 205 North 9th Street. The testers observed the following during their visit:

a) The threshold at the door into the fitness center was too high and not beveled;

b) The entry door to the apartment had a threshold that was too high and not beveled;

c) All the interior doors in the apartment were too narrow;

d) The apartment had two terraces, each with a step up and one had an exterior step down that exceeded 4 inches;

e) The unit had a galley kitchen that lacked the required clearance from counter to refrigerator door at the entrance of the kitchen; and

f) Both bathrooms did not have sufficient clear floor space.

35. The second apartment Eddie showed the FHJC testers was located at Driggs-North at 220 North 10th Street. The testers observed the following during their visit:

a) The access route to the rooftop deck from the elevator had a step up;

b) The top row of mailboxes was too high;

c) The entry door to the apartment had a threshold that was too high and not beveled;

d) All the interior doors in the apartment were too narrow; and

e) The apartment had a balcony with a step up and then down to access it.

**The Rabsky Group's Ongoing Design and Construction of Inaccessible Housing**

36. The inaccessible design and construction features at Halo LIC, The Driggs

and Driggs-North are similar.  These similarities over a period of at least five years indicate that The Rabsky Group and its affiliated companies have a regular practice of designing and constructing multi-family residential dwellings in New York City that do not comply with the accessibility requirements of the Fair Housing Act, the New York State Human Rights Law or the New York City Human Rights Law.

37.  FHJC has identified other multi-family residential apartment buildings that The Rabsky Group is currently in the process of designing and constructing in Brooklyn and Queens, including, among other sites, an 1100-unit rental development proposed to be built in The Broadway Triangle area of Williamsburg, Brooklyn.  Since construction has not yet been completed, or in some instances started, at these additional sites, FHJC is currently unable to determine whether their design or construction complies with the accessibility requirements of fair housing laws.

38.  Based on Defendant Rabsky Group's regular and ongoing practice of designing and constructing inaccessible apartment buildings as described above,  FHJC believes that it is likely that it will be injured by Defendant Rabsky Group's future design and construction of additional multi-family residential buildings in New York City that is about to occur as defined by 42 U.S.C. § 3602(i).

## LEGAL CLAIMS

### FIRST CAUSE OF ACTION
(Fair Housing Act – The Rabsky Group, Purvis Holdings, North-Driggs Holdings and North Plaza Holdings)

39.  Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

40. The apartment units at Halo LIC, The Driggs, Driggs-North and multi-family residential buildings under design and construction by Defendant Rabsky Group are "covered multi-family dwellings" as defined by 42 U.S.C. § 3604(f)(7).

41. Defendants Rabsky Group, Purvis, North-Driggs and North Plaza have designed and constructed, and are, or are about to, design and construct covered multifamily dwellings and common use areas at Halo LIC, The Driggs, Driggs-North and multi-family residential buildings not yet fully constructed in violation of 42 U.S.C. § 3604(f)(3)(C).

42. As a direct and proximate result of these Defendants' failure to design and construct in compliance with the accessibility requirements of the Fair Housing Act, Plaintiff FHJC has suffered, and will continue to suffer, damages, including diversion of resources and frustration of mission.

43. As a direct and proximate result of these Defendants' failure to design and construct in compliance with the accessibility requirements of the Fair Housing Act, inaccessible dwellings have been and will be constructed in New York City that reduce housing opportunities for persons with physical disabilities.

44. These Defendants' failure to design and construct was and is intentional, willful, or done with reckless disregard.

## SECOND CAUSE OF ACTION
### (Fair Housing Act –Salamon Engineering)

45. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

46. The apartment units at Halo LIC are "covered multi-family dwellings" as defined by 42 U.S.C. § 3604(f)(7).

47. Defendant Salamon Engineering designed and constructed the covered multifamily dwellings and common use areas at Halo LIC in violation of 42 U.S.C. § 3604(f)(3)(C).

48. As a direct and proximate result of Defendant's failure to design and construct the Halo LIC in compliance with the accessibility requirements of the Fair Housing Act, Plaintiff FHJC has suffered damages, including diversion of resources and frustration of mission.

49. As a direct and proximate result of Defendant's failure to design and construct in compliance with the accessibility requirements of the Fair Housing Act, inaccessible dwellings have been constructed in New York City that reduce housing opportunities for persons with physical disabilities.

50. Defendant's failure to design and construct was intentional, willful, or done with reckless disregard.

**THIRD CAUSE OF ACTION**
**(New York State Human Rights Law - The Rabsky Group, Purvis Holdings, North-Driggs Holdings and North Plaza Holdings)**

51. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

52. Plaintiff is a person as defined by Executive Law § 292(1).

53. Halo LIC, The Driggs, North-Driggs and other multi-family residential apartment buildings currently under construction and/or development by Defendants Rabsky Group, Purvis, North-Driggs and North Plaza are "housing accommodations" as defined by Executive Law § 292(10).

13

54. Defendants Rabsky Group, Purvis, North-Driggs and North Plaza have designed and constructed and are designing and constructing the above-identified housing accommodations in violation of the accessibility requirements found in Executive Law § 296(18)(3) and the New York State Uniform Fire Prevention and Building Code.

55. As a direct and proximate result of Defendants' failure to design and construct in compliance with the accessibility requirements of the New York State Human Rights Law, Plaintiff FHJC has suffered damages, including diversion of resources and frustration of mission.

56. Defendants' failure to design and construct was intentional, willful, or with reckless disregard.

## FOURTH CAUSE OF ACTION
### (New York State Human Rights Law – Salamon Engineering Group)

57. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

58. Plaintiff is a person as defined by Executive Law § 292(1).

59. Halo LIC is a "housing accommodation" as defined by Executive Law § 292(10).

60. Defendant Salamon Engineering Group has designed and constructed the Halo LIC in violation of the accessibility requirements found in Executive Law § 296(18)(3) and the New York State Uniform Fire Prevention and Building Code.

61. As a direct and proximate result of Defendant's failure to design and construct in compliance with the accessibility requirements of the New York State Human Rights Law, Plaintiff FHJC has suffered damages, including diversion of resources and frustration of mission.

62. Defendant's failure to design and construct was intentional, willful, or with reckless disregard.

## FIFTH CAUSE OF ACTION
**(New York City Human Rights Law - The Rabsky Group, Purvis Holdings, North-Driggs Holdings and North Plaza Holdings)**

63. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

64. Plaintiff is a person as defined by Administrative Code § 8-102(1).

65. Halo LIC, The Driggs, North-Driggs and other multi-family residential apartment buildings currently under construction and/or development by Defendants Rabsky Group, Purvis, North-Driggs and North Plaza are "housing accommodations" as defined by Administrative Code § 8-102(10).

65. Defendants Rabsky Group, Purvis, North-Driggs and North Plaza have designed and constructed and are designing and constructing the above-identified housing accommodations in violation of the accessibility requirements found in Administrative Code § 27-292.8.296(18)(3).

66. By doing so, these Defendants are otherwise denying and/or withholding housing accommodations from people with disabilities in violation of Administrative Code § 8-107(5)(a)(1).

67. By doing so, these Defendants are discriminating in the furnishing of facilities or services in connection with housing accommodations based on disability in violation of Administrative Code § 8-107(5)(a)(2).

68. As a direct and proximate result of Defendants' failure to design and construct in compliance with the accessibility requirements of the New York City Human Rights Law, Plaintiff FHJC has suffered damages, including diversion of resources and frustration of mission.

69. Defendants' failure to design and construct was intentional, willful, or with reckless disregard.

70. Plaintiff has caused to be served a copy of the complaint upon the City Commission on Human Rights and Corporation Counsel, pursuant to Administrative Code § 8-502(c).

## SIXTH CAUSE OF ACTION
### (New York City Human Rights Law – Salamon Engineering Group)

71. Plaintiff realleges and incorporates by reference the allegations set forth in this Complaint as if fully set forth herein.

72. Plaintiff is a person as defined by Administrative Code § 8-102(1).

73. Halo LIC is a "housing accommodation" as defined by Administrative Code § 8-102(10).

74. Defendant Salamon Engineering Group has designed and constructed Halo LIC in violation of the accessibility requirements found in Administrative Code § 27-292.8.296(18)(3).

75. By doing so, Defendant Salamon Engineering Group has otherwise denied and/or withheld housing accommodations from people with disabilities in violation of Administrative Code § 8-107(5)(a)(1).

16

76. By doing so, Defendant Salamon Engineering Group has discriminated in the furnishing of facilities or services in connection Halo LIC based on disability in violation of Administrative Code § 8-107(5)(a)(2).

77. As a direct and proximate result of Defendant's failure to design and construct in compliance with the accessibility requirements of the New York City Human Rights Law, Plaintiff FHJC has suffered damages, including diversion of resources and frustration of mission.

78. Defendant's failure to design and construct was intentional, willful, or with reckless disregard.

79. Plaintiff has caused to be served a copy of the complaint upon the City Commission on Human Rights and Corporation Counsel, pursuant to Administrative Code § 8-502(c).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

(a) Declaring that Defendants' discriminatory practices violate the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law.

(b) Enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation from discriminating on the basis of disability, by failing to design and construct covered multifamily dwellings in compliance with the accessibility requirements of the Fair Housing Act, the New York State Human Rights Law and the New York City Human Rights Law.

(c) Enjoining Defendants and their agents, employees, and successors, and all other persons in active concert or participation to,

    (i) Make or pay for all the necessary retrofitting in the multifamily dwellings and common areas of Halo, Inc., The Driggs, and Driggs-North;

    (ii) Make all necessary modifications to the design and construction of multi-family covered dwellings currently planned for construction in New York City;

    (iii) Make all necessary modifications to their policies, practices, and procedures to comply with fair housing laws;

    (iv) Train all management, agents, and employees on fair housing laws;

    (v) Allow monitoring of their design and construction of covered multifamily dwellings for compliance with the accessibility requirements of the Fair Housing Act, the New York State Human Rights Law and the New York City Human Rights Law;

(d) Awarding such damages to Plaintiff as will fully compensate for injury caused by Defendants' unlawful practices;

(e) Awarding punitive damages to Plaintiff;

(f) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

    (g)    Granting Plaintiff such other further relief as may be just and proper.

Dated:  New York, New York
        July 6, 2017

                EMERY CELLI BRINCKERHOFF
                & ABADY LLP

                By: _____/s_____
                Diane L. Houk
                600 Fifth Avenue, 10th Floor
                New York, New York 10020
                Phone: (212) 763-5000
                Fax: (212) 763-5000

                *Attorneys for Plaintiffs*